[Civ. No. 11711.   First Dist., Div. One.   Jan. 17, 1942.]

DON THEODORE STOOPS, Appellant, v. JOE E. JOHNSON et al., Respondents.

Paul S. Crouch for Appellant.

Harriet Pugh for Respondents.

KNIGHT, J.—Plaintiff appeals from a judgment entered in favor of defendants after trial on the merits, and the appeal is presented on a bill of exceptions; but plaintiff has not complied with the mandatory provisions of section 950 of the Code of Civil Procedure which require an appellant on an appeal from a final judgment to furnish the reviewing court with a copy of the judgment roll. Consequently, it is impossible to ascertain from the transcript, or for that matter from either of the briefs filed by the respective parties, the nature of the action, the relief sought, the defenses interposed, the issues tried and determined, or the form of the judgment rendered. Under well-settled rules an appeal may properly be dismissed by the court of its own motion if the record fails to comply with legal requirements; however, con-

sideration has been given to the points urged by plaintiff in support of the appeal, and it is apparent that no finding of error can be based thereon.

The evidence set forth in the bill of exceptions consists of the testimony given by the plaintiff and one of the defendants; also several documentary exhibits introduced by them; and the facts to be gleaned therefrom may be stated as follows: Joe E. Johnson and his wife, Zula Joyce Johnson, were the owners and holders of a trust deed dated December 30, 1936, covering real property belonging to the plaintiff Don Theodore Stoops, and given to secure the payment of a promissory note of even date therewith for the sum of $1,550. On April 15, 1937, the defendant Ernest R. Van Houten acquired said trust deed and note by transfer and assignment from the Johnsons as part payment in a real estate transaction which took place between the Johnsons and Van Houten. Some time thereafter, the date not appearing in the record, Stoops brought the present action against the Johnsons and Ernest R. and Doris K. Van Houten, presumably to quiet title to the property, claiming according to Stoops' testimony, that the Johnsons had given him an agreement to the effect that he was to pay them only $500, and that he, Stoops, had told Van Houten about the agreement before the latter acquired the trust deed and note. The agreement was never recorded, and while the bill of exceptions recites that it was introduced in evidence, no portion of its contents is set forth in the record, in substance or otherwise; nor is there anything in the record showing when it was made. Stoops claimed also in his testimony that he had tendered Mrs. Johnson $250, which she refused to accept, and that thereafter his attorney sent a letter to the Johnsons tendering $194 and informing them "that a promissory note was executed in their favor." But there is nothing in the record showing when these asserted tenders were made, whether before or after Van Houten acquired the trust deed and note, or whether before or after the commencement of the present action.

Van Houten denied having any knowledge whatever of the existence of said agreement prior to or at the time of the transfer to him of the trust deed and note. In this respect he testified that the Johnsons had never mentioned the agreement to him, and that he met Stoops for the first time on April 17, 1937, which it will be noted was two days after the trust deed and note had been transferred to him. He

testified that on that date he called on Stoops to notify him that he was then the owner of the trust deed and note and that all future payments should be made to him; also to inquire whether Stoops had paid the taxes on the property; that upon being so notified, Stoops became "very angry" and declared he would not pay Van Houten anything; that he "had nothing to do with him"; and that Stoops then went on to say that the Johnsons had made an agreement with him "to take $500 for the trust deed." Continuing, Van Houten testified that he told Stoops he knew nothing of the existence of such an agreement; that he "did not want to get into any trouble" over the matter, and that although the transaction with the Johnsons had been closed he would see if it could be undone; and his testimony shows that he took steps to that end, but his efforts were unsuccessful. The Johnsons were not called as witnesses by either side.

The evidence further shows that there was a second conversation between Stoops and Van Houten which took place in the tax collector's office, but again there is a direct conflict as to whether it occurred before or after the date of the transfer of the trust deed and note to Van Houten. Therefore, in view of the trial court's judgment in favor of defendants, it must be taken as true as testified by Van Houten that both conversations took place after he had acquired the trust deed and note.

With respect to the findings, the bill of exceptions recites merely that the court found that Stoops "did not pay or tender to" the Johnsons $250 nor deliver to them his promissory note for that amount; also that there was a finding "to the effect" that the trust deed was a lien for the sum of $1,550 on the property. No other findings are mentioned; and as to the judgment the bill recites only that it was therein decreed that the Van Houtens were "the owners and holders in due course and for a valid consideration of the first trust deed mentioned in their answer"; also that the agreement entered into between plaintiff and the Johnsons "was not a valid and subsisting lien upon the property . . . and was of no force and effect."

The first point made by plaintiff in his brief is that contrary to the trial court's finding the uncontradicted testimony shows that plaintiff "made an actual tender of money and an actual tender upon a promissory note pursuant to his agreement" with the Johnsons. Obviously, however, to be

binding on Van Houten it was essential to establish either that the tender was made prior to the transfer of the trust deed and note to Van Houten, or that the latter acquired the trust deed and note with knowledge of the existence of the agreement. With respect to the latter, as already pointed out, there is an implied finding based on conflicting evidence that Van Houten had no such knowledge; and as to the former, no portion of the agreement is set out in the record; hence there is nothing to show that any tender was ever made in conformity with the terms thereof, or if so, then there is an entire absence of evidence showing when it was made. For aught that appears in the record the tender may have been made after the commencement of the action.

Plaintiff's second point is that "the evidence is . . . uncontradicted to the effect that there was $1,200 balance due on the trust deed and despite this fact, the court made findings to the fact that there was $1,550 due on the trust deed." Just what, if anything, the trial court decreed in this respect does not appear in the record because of the absence of a copy of the judgment, and the only reference made thereto in the bill of exceptions is the finding already mentioned "to the effect that the trust deed was a lien for the sum of $1,550 on the property"; and there is evidence to support such finding. In this connection Van Houten testified that he "was the owner and holder of a promissory note in the principal sum of $1,550 . . . secured by a trust deed on the property described in the complaint, in the same amount," and that the Johnsons had transferred said trust deed and note "to him in payment of $1,200 due him under an agreement they had with him for his parking lot. . . ." True, plaintiff testified that during the first conversation between him and Van Houten the latter told him he "understood that there was $1,200 due on the trust deed"; but apparently the trial court declined to accept as true that portion of plaintiff's testimony, as it did the remainder of his version of the conversation. In any event, if before Van Houten acquired the trust deed and note the amount due thereon had been reduced to $1,200, plaintiff certainly would have known thereof and he gave no testimony to that effect.

Plaintiff calls attention to the fact that the Johnsons did not testify, and in this connection he devotes the last two and a half pages of the four-page printed brief he filed in support of the appeal to quoting excerpts from decisions

embodying restatements of the disputable presumption declared by subdivision 5 of section 1963 of the Code of Civil Procedure, ''That evidence willfully suppressed would be adverse if produced.'' Wherein plaintiff claims those decisions are here pertinent is not made clear, for nowhere in the record is there anything to justify even a suspicion of suppression of evidence.

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.